***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates, an employee-employer relationship existed between plaintiff and defendant-employer.
3. On all relevant dates, defendant-employer was insured by American Casualty Company.
4. Plaintiff's average weekly wage is $571.00, yielding a compensation rate of $380.67.
5. At the Deputy Commissioner's hearing, the parties submitted the following:
 a. A packet of stipulated documents, which was admitted into the record and marked as Stipulated Exhibit (2), included the following:
 (1) Industrial Commission forms;
 (2) Medical records;
 (3) Military Order of the Purple Heart;
 (4) Medical billing statements;
 (5) An accident investigation report;
 (6) A transcript of plaintiff's recorded statement;
 (7) Documents from CNA Claims Plus;
 (8) Plaintiff's answers to defendants' interrogatories, and;
 (9) A personnel file from defendant-employer.
 b. A second packet of stipulated documents, which was admitted into the record and marked as Stipulated Exhibit (3), included the following: *Page 3 
 (1) A supplement to the accident/investigation report:
 (2) Relevant defendant-employer documents, and;
 (3) Additional employee records.
6. At the Deputy Commissioner's hearing, defendants submitted a page from defendant-employer's policy manual highlighting its policy regarding the use of prescription medications, which was admitted into the record and marked as Defendants' Exhibit (1).
7. The issues before the Full Commission are whether plaintiff sustained a compensable injury by accident to his back on or about April 8, 2007; and whether plaintiff's current medical condition is causally related to the alleged injury by accident of April 8, 2007 and, if so, what indemnity and medical compensation, if any, plaintiff is entitled to receive.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 36 years of age with a date of birth of October 25, 1971. Plaintiff is a high school graduate and took courses at Guilford Technical Community College. Plaintiff is also a former United States Marine.
2. A September 29, 2004 report prepared by the Veterans' Affairs (VA) Hospital indicates that plaintiff receives disability compensation from the military for intervertebral disc syndrome of the lumbar spine with lower left radiculopathy. The report also notes that plaintiff's degenerative disc disease of the cervical spine with radiculopathy is not related to his military service. According to this report, plaintiff's total percentage of disability is considered to be 60%. *Page 4 
3. Plaintiff was initially employed by defendant-employer in May 2006 as a case picker, but had different assignments during his employment. In February 2007, plaintiff received a temporary assignment to layer picker, which is a forklift operator, while another employee was out on medical leave. On March 19, 2007, plaintiff returned to his position as a case picker.
4. Plaintiff testified that he exacerbated a pre-existing back injury while working for defendant-employer on April 8, 2007. This date is repeatedly referenced in this matter, as it was the date when plaintiff arrived at work before his alleged injury occurred at approximately 1:30 a.m. on April 9, 2007. Plaintiff contends that he injured his back when he lifted a box of shampoo, weighing as much as 50 pounds, and twisted to place the box onto a pallet. As a result, plaintiff alleges that he pulled his back and experienced a sharp pain radiating into his legs.
5. Plaintiff's supervisor, Mark Harrison testified that he observed plaintiff leaning on some cases near the end of his shift on April 9, 2007, and that plaintiff was complaining of back spasms. Mr. Harrison further testified that plaintiff informed him that his back was hurting because he had not taken his medication and that plaintiff did not report any lifting incident.
6. A few hours after the alleged injury, plaintiff spoke with defendant-employer's Safety and Sanitation Manager, Jack Mitchell. Mr. Mitchell testified that plaintiff informed him that he had forgotten his medication, but once he got home and took it, he would be fine.
7. Following the incident giving rise to this claim, plaintiff was transported by ambulance to the Emergency Room at Wesley Long Hospital. X-rays of plaintiff's back revealed that he had not sustained any acute injury. Plaintiff was diagnosed as having a muscle *Page 5 
spasm and was prescribed a muscle relaxer. Additionally, plaintiff was medically excused from work for two days and referred to the VA Medical Center for follow-up care.
8. On April 12, 2007, plaintiff was examined at the VA Medical Center by Dr. Harold Goforth, who diagnosed plaintiff with a low back strain and resulting left sciatica. Dr. Goforth's records indicate that plaintiff had pre-existing back problems and had recently injured his back loading boxes while at work. Plaintiff was medically excused from work for one week, prescribed additional medications and assigned a ten-pound lifting restriction. Plaintiff was also advised to follow up with his employer's workers' compensation physician.
9. Due to ongoing pain, plaintiff sought additional treatment from Dr. Anthony Crawford of Crawford Chiropractic Clinic on April 27, 2007. Plaintiff reported radiating pain down both legs and numbness in his right leg. These right leg symptoms are not referred to in the VA's prior disability rating. Dr. Crawford referred plaintiff to Dr. Peter Whitfield.
10. On May 21, 2007, plaintiff was examined by Dr. Whitfield and reported injuring his back at work when he lifted a stack of cases and experienced an acute onset of pain. Plaintiff also reported experiencing pain in his back that radiated down both legs reaching as far as his calves. Dr. Whitfield found plaintiff to be neurologically intact, with no loss of strength or reflexes in either leg, and no pain with movement of his hips or knees. An MRI scan of plaintiff's low back revealed a disc protrusion at the L5-S1 level with some pressure on the nerve greater on the left than right.
11. Dr. Whitfield medically excused plaintiff from work during the period of his treatment, which included a series of three steroid injections. The last steroid injection was performed on August 6, 2007 and Dr. Whitfield released plaintiff to return to work on August 31, 2007. *Page 6 
12. The VA Medical Center's records reflect that the physicians determined that plaintiff's back condition had deteriorated after April 9, 2007, and that they increased his disability rating by 10% due to plaintiff's reported lifting incident.
13. When asked whether the incident plaintiff reported to have occurred at work on April 9, 2007 could have caused the herniated disc and related problem, Dr. Whitfield testified that plaintiff probably had more trouble with his legs after that date than before it. Dr. Whitfield could not determine whether plaintiff had a protruding disc prior to April 9, 2007 because he did not have access to prior MRIs that may have been performed. However, Dr. Whitfield further testified that if plaintiff had a protruding disc prior to April 9, 2007, it was not causing problems prior to that date, and was now worse, in that it was putting pressure on a nerve. Additionally, Dr. Whitfield testified that the best he could determine was that plaintiff reported having a back injury at work and that his back was worse as a result of that incident.
14. Dr. Whitfield also testified that he did not know whether plaintiff had an exacerbation of a pre-existing condition because he did not know what plaintiff's condition was prior to the injury. He further explained that "It's just impossible to determine one particular cause of a problem with your back. It's just too complicated." Regarding plaintiff's prior disability rating, Dr. Whitfield found that the additional 10% disability was a conflict with his evaluation, because he did not find that plaintiff had any paralysis below the knee. Plaintiff told Dr. Whitfield that he did have some radiating pain and numbness in his legs, but that it was not much of an issue when he last saw plaintiff. Ultimately, Dr. Whitfield testified that he was unable to give an opinion to a reasonable degree of medical certainty that plaintiff sustained an exacerbation of his pre-existing back condition as a result of the incident on April 9, 2007. *Page 7 
15. Dr. David N. DuPuy opined that plaintiff's back problems are chronic and will not get better. Dr. DuPuy further opined that there was nothing that occurred at plaintiff's job that made his condition worse.
16. Based upon the greater weight of the credible evidence of record, the Full Commission finds that on April 9, 2007, plaintiff experienced an increase in back pain as a result of the lifting incident while he was working. However, the medical evidence does not causally relate plaintiff's back condition after April 9, 2007 to the lifting incident at work. Therefore, plaintiff failed to prove by the greater weight of the evidence that he sustained an injury by accident arising out of and in the course of his employment with defendant-employer or that he sustained a specific traumatic incident as a result of the work assigned.
17. Plaintiff was terminated by defendant-employer on July 5, 2007, which was during the period he treated with Dr. Whitfield. Defendant-employer terminated plaintiff for a violation of their attendance policy by failing to notify his direct supervisor of all absences.
18. Plaintiff testified he has applied for several jobs since being terminated by defendant-employer, including one with the U.S. Post Office. However, plaintiff has not yet secured employment.
19. Regardless of whether or not an injury by accident occurred, there is insufficient medical evidence of record upon which to find that plaintiff's back condition for which he received treatment from Dr. Whitfield was the direct and natural result of or causally related to any work related incident on April 9, 2007. Accordingly, any disability or inability to earn wages subsequent to that date was not the direct and natural result of or causally related to any work related incident on April 9, 2007. *Page 8 
20. The Deputy Commissioner's post-hearing Order of March 17, 2008 includes the following mandate, "That thirty days following the date upon which depositions are scheduled to be completed to the undersigned, with that date being June 13, 2008 by the current schedule, the parties shall submit a proposed Opinion and Award which shall contain page citations to the depositions or document, or a reference to the hearing testimony, upon which the finding or conclusion is based." Each party also submitted Contentions, which are not referenced as being required in the March 17, 2008 Order. In violation of the Order, defendants failed to provide any citations in either their Contentions or proposed Opinion and Award. Plaintiff likewise failed to provide citations in his proposed Opinion and Award, which is in violation of the Order.
21. For the failure to comply with the Order, the imposition of sanctions is appropriate.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden of proving that his injury resulted from an accident arising out of and in the course of his employment. Morrisonv. Burlington Industries, 304 N.C. 1, 13, 282 S.E.2d 458, 467 (1981). "There must be competent evidence to support the inference that the accident in question resulted in the injury complained of, i.e., some evidence that the accident at least might have or could have produced the particular disability in question." Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980). In Click, the Court further held that medical testimony was required "to provide a proper foundation for the Commission's finding on the question of the injury's origin." Id. at 169, 265 S.E.2d at 392. *Page 9 
2. Although on April 9, 2007, plaintiff experienced an increase in back pain when he lifted the box at work, plaintiff did not present competent medical evidence to prove that his back condition after April 9, 2007, was causally related to the lifting incident. As such, on April 9, 2007, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer or in the form a specific traumatic incident as a result of the work assigned. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff's back condition for which he received treatment from Dr. Whitfield was not the direct and natural result of or causally related to any work-place incident on April 9, 2007. N.C. Gen. Stat. § 97-2(6);see, e.g., Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
4. Accordingly, any disability or inability to earn wages subsequent to April 9, 2007 is not the direct and natural result of or causally related to any work-place incident occurring on April 9, 2007. N.C. Gen. Stat. §97-2(9); Russell v. Lowe's Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993).
5. Given the causation rulings in this matter, plaintiff is not entitled to indemnity or medical compensation. N.C. Gen. Stat. §§ 97-29;97-25.
6. For defendants' violation of the Deputy Commissioner's post-hearing Order, defendants are subject to a reasonable sanction of $200.00, which shall be paid by check payable to the North Carolina Industrial Commission and forwarded to Ms. Carolyn Wall, Accounts Receivable, at the Industrial Commission address.
7. For plaintiff's violation of the Deputy Commissioner's post-hearing Order, plaintiff is subject to a reasonable sanction of $100.00, which shall be paid by check payable to *Page 10 
the North Carolina Industrial Commission and forwarded to Ms. Carolyn Wall, Accounts Receivable, at the Industrial Commission address.
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for indemnity and medical compensation must be and is HEREBY DENIED.
2. Defendants shall pay, as a sanction for the violation of the Deputy Commissioner's post hearing Order, the reasonable amount of $200.00 to be paid by check payable to the North Carolina Industrial Commission and forwarded to Ms. Carolyn Wall, Accounts Receivable, at the Industrial Commission address.
3. Plaintiff shall pay, as a sanction for the violation of the Deputy Commissioner's post hearing Order, the reasonable amount of $100.00 to be paid by check payable to the North Carolina Industrial Commission and forwarded to Ms. Carolyn Wall, Accounts Receivable, at the Industrial Commission address.
4. Defendants shall pay the costs.
This the 22 day of January, 2009.
S/__________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/__________________ PAMELA T. YOUNG CHAIR
 S/__________________ DIANNE C. SELLERS COMMISSIONER *Page 1